# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |  | |
|---|---|---|---|
| MIGUEL NIEVES, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Case No. 14-cv-2300 | |
| | ) | | |
| BANK OF AMERICA, N.A., BAC HOME | ) | Judge Robert M. Dow, Jr. | |
| LOANS SERVICING, EVERBANK and | ) | | |
| EVERHOME MORTGAGE, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Bank of America, N.A.,[1] EverBank, and Everhome Mortgage's motions to dismiss the complaint [20, 21] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants' motions are granted in part. For the reasons that follow, the Court determines that abstention is appropriate under the *Colorado River* doctrine. These proceedings therefore are stayed pending resolution of Case Number 2011-CH-11285 in the Circuit Court of Cook County. The parties are instructed to provide the Circuit Court with a copy of this memorandum opinion and to file a joint status report with this Court within seven days of the Circuit Court's final disposition of Case Number 11-CH-11285.

## I.  Background[2]

This case arises from a pending foreclosure on Plaintiff's primary residence on West Grace Street in Chicago. Plaintiff Miguel Nieves alleges that he borrowed $252,500 from

---

[1] BAC Home Loans Servicing, L.P. ("BAC") has merged with and into Bank of America, N.A. ("BANA"). BANA therefore is the entity responding to the complaint on behalf of BAC as its successor by merger. See [20-1], Def.'s Mot. at 1.

[2] The facts are drawn from Plaintiff's complaint and are taken as true for purposes of deciding Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(1). See *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

Countrywide Bank on April 3, 2007 to purchase the property. [1], Compl. at ¶ 18. In his response brief in opposition to Defendants' motions, Plaintiff clarifies that he actually has owned the property since 1995, but that he "obtained a refinance loan from Countrywide Bank in the amount of $252,500" in April 2007. [22], Pl.'s Resp. at 3. At some point thereafter, BANA acquired the servicing rights on the loan, and BAC became the creditor. [1], Compl. at ¶ 19.

In July 2009, Plaintiff called BANA to discuss lowering his monthly loan payments after his income declined. See [1], Compl. at ¶¶ 21–22. BAC offered Plaintiff the Fannie Mae HomeSaver Forbearance program, under which, pursuant to a Forbearance Agreement, Plaintiff's monthly payment would be reduced to $978 per month for a period of six months; previously, Plaintiff paid between $1,200 and $1,750 per month. See *id.* at ¶¶ 23–25. The program allegedly required BANA to "work with the borrower to identify the feasibility of, and implement, a more permanent foreclosure prevention alternative." *Id.* at ¶ 26 (quoting Ex. D, Fannie Mae Announcement). BANA also advised Plaintiff that the "Forbearance Agreement was similar to a trial payment program that would lead to a permanent mortgage modification." *Id.* at ¶ 27. Based on these representations, Plaintiff signed the Forbearance Agreement believing that BANA would work with him to permanently reduce his monthly loan payments. See *id.* at ¶ 28. Plaintiff made six reduced payments to BANA from September 2009 through February 2010, but BANA never discussed a "more permanent solution" with Plaintiff, despite Plaintiff inquiring about modifications to his loan. *Id.* at ¶¶ 28–30. After Plaintiff made a seventh reduced payment in March 2010, BANA directed Plaintiff to resume his payments in accordance with the original loan schedule. *Id.* at ¶ 32. Plaintiff did so by paying approximately $1,723.44 per month thereafter. *Id.* at ¶ 33. Plaintiff contends that he has never missed a loan

payment and that he has made payments on the loan since 2007 through the date he filed his complaint. See *id.* at ¶¶ 20, 34.

At some point, BANA allegedly began assessing "hundreds of dollars in unearned fees and costs, including hundreds of dollars in late fees against [Plaintiff's] account each and every month." [1], Compl. at ¶ 35. Such fees and costs wrongfully were deducted from Plaintiff's payments before the payments were applied to principal, interest, and escrow. *Id.* at ¶ 36. BAC filed a foreclosure action against Plaintiff in the Circuit Court of Cook County, Case Number 11-CH-11285, on March 24, 2011 (the "State Foreclosure Action"). *Id.* at ¶ 38. In August 2011, BANA began rejecting Plaintiff's monthly payments, and in September, inaccurately claimed that Plaintiff owed $16,574 (or eleven monthly payments) to bring the loan current. *Id.* at ¶¶ 42, 44. BANA also allegedly failed to respond to Plaintiff qualified written requests, in which he disputed the default amount. *Id.* at ¶¶ 47, 50. BANA began accepting Plaintiff's monthly payments again in November 2011 and continued to do so for about two years. *Id.* at ¶¶ 50, 52.

In September 2013, however, BANA rejected a payment and reported that Plaintiff's loan had been referred to foreclosure. [1], Compl. at ¶ 53. At the end of September, Plaintiff also learned that his loan was to be transferred to Everhome Mortgage and EverBank. *Id.* at ¶¶ 57–58. Everhome Mortgage and EverBank are Florida corporations that have served as the servicer and creditor, respectively, on Plaintiff's mortgage loan from October 2013 to the present. See *id.* at ¶¶ 10–13. On October 2, 2013, Everhome Mortgage sent Plaintiff a Validation of Debt Notice pursuant to the Federal Debt Collection Practices Act ("FDCPA"). *Id.* at ¶ 61. According to Everhome Mortgage, Plaintiff owed $290,095, of which $251,727 was unpaid principal and the rest interest, escrow advances, and $2,634 in corporate advances. *Id.* Plaintiff disputed the debt amount and alleges that neither Everhome Mortgage nor EverBank ever verified the debt

3

amount. *Id.* at ¶ 67. In March 2013, EverBank proceeded with the State Foreclosure Action by filing a motion for judgment and sale. *Id.* at ¶ 68.

Plaintiff brings five counts in his complaint. In Count I, Plaintiff asserts a breach of contract claim against all Defendants for their alleged failure to abide by the original mortgage contract and the subsequent Forbearance Agreement. See [1], Compl. at ¶¶ 78–84. Plaintiff alleges that Defendants failed to apply his payments in accordance with the agreements, and that BANA and BAC breached the agreements in a number of ways, such as by failing to accept Plaintiff's payments, placing the loan in foreclosure, filing a wrongful foreclosure action, and converting escrow funds to unauthorized fees and costs. *Id.* at ¶ 85. In Count II, Plaintiff alleges violations of the FDCPA against Defendants Everhome Mortgage and EverBank under 15 U.S.C. §§ 1692d, e, f & g(b) for misapplying and rejecting his payments, failing to dismiss the foreclosure action, and wrongfully declaring that the loan was in default, among other actions. See *id.* at ¶¶ 88–98. In Count III, Plaintiff alleges violations of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, against all Defendants based on their attempts to collect payments from Plaintiff, the filing of the foreclosure action, and the alleged failure to comply with the Forbearance Agreement. See *id.* at ¶¶ 101–121. In the fourth count, Plaintiff alleges a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 against BANA and Everhome Mortgage based on their alleged failure to investigate Plaintiff's dispute of the outstanding debt amount and their failure to properly credit Plaintiff's payments, among other allegedly wrongful actions. See *id.* at ¶¶ 122–133. Finally, in the fifth count, Plaintiff alleges violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1641(g) and 1666d against BAC and EverBank. See *id.* at ¶¶ 134–139.[3]

---

[3] Plaintiff styles the fourth and fifth counts as Counts V and VII, respectively, but Plaintiff brings only five counts total.

As discussed, BAC filed a foreclosure complaint against Plaintiff in March 2011. On March 24, 2014, BAC filed a motion for a default judgment and a motion seeking a judgment of foreclosure and sale of the property. [20-1], Def.'s Mot. at 2. Plaintiff filed his complaint in this Court a week later, on April 1, 2014. Shortly thereafter, on May 21, 2014, Plaintiff filed a motion in the State Foreclosure Action, requesting that the Cook County Circuit Court stay the proceedings until resolution of this case. See [20-5], Ex. 4. On August 1, 2014, the Circuit Court entered an order staying the foreclosure action pending resolution of Defendants' motions to dismiss in this case. See [25], Ex. A.

## II.     Legal Standard

Defendants have moved to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[4] Defendants first argue that under Rule 12(b)(1), the Court must decline to exercise jurisdiction and dismiss Plaintiff's complaint under the *Colorado River* abstention doctrine. With respect to Defendants' Rule 12(b)(6) arguments, BANA argues that Plaintiff cannot state a valid breach of contract claim because BANA never executed the Forbearance Agreement, that Plaintiff has not properly pleaded violations of the ICFA, and that the RESPA and TILA claims are time-barred. Defendants Everhome Mortgage and EverBank similarly argue that Plaintiff cannot state a breach of contract claim and that Plaintiff fails to plead sufficient facts to allege violations of the FDCPA and ICFA. The Court first will address Defendants' abstention argument under Rule 12(b)(1) and will then, if necessary, turn to the merits of Defendants' Rule 12(b)(6) arguments. See *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013).

---

[4] Defendants EverBank and Everhome Mortgage join and adopt Defendant BANA's motion to dismiss with respect to BANA's Rule 12(b)(1) argument. See [21-1], Defs.' Mot. at 1.

A Rule 12(b)(1) motion seeks dismissal of an action over which a court allegedly lacks subject matter jurisdiction. The party asserting jurisdiction bears the burden of establishing that jurisdiction is satisfied. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). In evaluating a motion brought under Rule 12(b)(1), the court accepts as true the plaintiff's well-pleaded allegations and draws all reasonable inferences in favor of the nonmoving party. *Long*, 182 F.3d at 554. The court also may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)) (internal quotation marks omitted).

## III. Analysis

In general, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The *Colorado River* doctrine presents an exception to that rule, however, where there are "exceptional circumstances," and "the clearest of justifications" warrant abstention and deferral to a concurrent state court case. See *Huon*, 657 F.3d at 645–46 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1983)) (internal quotation marks omitted). Defendants argue that the Court should abstain under *Colorado River* due to the pending State Foreclosure Action, which was filed three years before Plaintiff's federal complaint. Abstention is appropriate, Defendants argue, because the federal and state cases arise from the same set of operative facts, and "the foundation of each of Plaintiff's claims in this case is based upon the ownership of the Note and Mortgage and the right to collect the debt through foreclosure and sale of the Property[.]" [20-1], Def.'s Mot. at 5. Accordingly,

6

allowing Plaintiff's case to go forward in federal court with the State Foreclosure Action also pending will lead to piecemeal litigation that the *Colorado River* doctrine seeks to avoid. See *id.*

The district court conducts a two-part inquiry to determine whether abstention is appropriate under *Colorado River*. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498 (7th Cir. 2011). The court first evaluates whether the concurrent federal and state cases are parallel. *Id.* "[S]uits need not be identical to be parallel." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). Rather, cases are parallel if "substantially the same parties are contemporaneously litigating substantially the same issues in another forum," *id.* (quoting *Interstate Material Corp. v. City of Chicago*, 847 F.3d 1285, 1288 (7th Cir. 1988)), or, otherwise put, if the cases "involve the same parties, arise out of the same facts and raise similar factual and legal issues," *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006). The key question is whether there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Huon*, 657 F.3d at 646 (quoting *Adkins*, 644 F.3d at 499)) (internal quotation marks omitted).

Here, the State Foreclosure Action and this action involve many of the same parties, including Plaintiff, BAC (now BANA), and EverBank.[5] See Dkt. Report, 11-CH-11285. In addition, there is no question that the two actions arise from the same facts and raise similar legal issues—namely, whether Plaintiff is in default on the loan, whether EverBank is entitled to foreclose on the property, and whether Defendants' actions with respect to the loan and Plaintiff's payments complied with the original mortgage contract and the alleged Forbearance Agreement. Plaintiff does not dispute that the cases arise from the same facts. In fact, in his motion to stay the State Foreclosure Action, Plaintiff argued that a stay was appropriate because

---

[5] According to the Cook County electronic docket, the plaintiffs in the State Foreclosure Action are BAC, EverBank, and Countrywide Home Loans (with whom Plaintiff originally executed the loan in 2007). The listed defendants are Miguel Nieves and Ada Nieves (presumably Plaintiff's wife, who also lives at the property). BANA reports that EverBank substituted as plaintiff for BAC in the State Foreclosure Action on June 19, 2014. [23], Def.'s Reply at n.2.

the two suits "involve the same set of operative facts, namely the alleged liability/breach of the subject mortgage and note" and "litigat[ing] both matters would be duplicative and would unnecessarily exhaust efforts and expenses." [20-5], Ex. 4 at 4.

Finally, the Court believes that there is a substantial likelihood that litigation and resolution of EverBank's pending motion for foreclosure in the State Foreclosure Action largely will resolve the claims at issue here. Plaintiff's federal complaint is premised on the contention that Plaintiff did not in fact default on the loan or that that foreclosure otherwise is improper. For example, Plaintiff's breach of contract and ICFA claims are based in part on Defendants' failure to properly apply Plaintiff's loan payments to principal and interest and on Defendants' pursuit of foreclosure. Likewise, Plaintiff's FDCPA and RESPA claims require resolution of whether Defendants sought to collect amounts that Plaintiff did not in fact owe. Finally, part of Plaintiff's TILA claim alleges that Defendants BAC and EverBank failed to refund credit balances to Plaintiff. See *id.* at ¶¶ 138–39. Although the State Foreclosure Action may not necessarily resolve all aspects of Plaintiff's claims, it's likely that it will narrow the issues and resolve most, if not all, of the factual questions on which Plaintiff's claims are premised.

Although it is true, as Plaintiff points out, that some of the claims in the federal complaint are asserted against the servicers of the loan (BANA and Everhome Mortgage)—which are not named as parties in the State Foreclosure Action—the Court nonetheless concludes that the actions are sufficiently parallel. See *AAR Int'l, Inc. v. Nimelias Enter., SA.*, 250 F.3d 510, 518 (7th Cir 2001) ("Suits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel.") (internal citations omitted). See also *Pirard v. Bank of America*, 2013 WL 1154294, at *4 (N.D. Ill. Mar. 19, 2013) (finding that federal action alleging violations of FDCPA and

other claims was parallel to state foreclosure action although certain defendant lenders were not parties in foreclosure); *Charles v. Bank of America, N.A.*, 2012 WL 6093903, at *4 (N.D. Ill. Dec. 5, 2012) (same). As Plaintiff himself explained just a few months ago in his motion to stay the State Foreclosure Action, "the contracts at issue [in the two suits] are identical[,] [b]oth actions involve the same property, the same mortgage, the same note and the payments thereunder." [20-5], Ex. 4 at 3. Because "[o]ne important factor [in determining whether actions are parallel] is whether both cases would be resolved by examining largely the same evidence," *Huon*, 657 F.3d at 647, this overlap is another indication that the cases are parallel.

Having found that the cases are sufficiently parallel, the Court next considers whether exceptional circumstances justify abstention. The Seventh Circuit has identified ten factors that are to be weighed in determining whether to abstain. They include:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Adkins*, 644 F.3d at 500–01. "Although no one factor is determinative, the Supreme Court has cautioned that 'the presence of federal-law issues must always be a major consideration weighing against surrender'" of jurisdiction. *Huon*, 657 F.3d at 648 (quoting *Moses H. Cone*, 460 U.S. at 26). Absent or neutral factors weigh in favor of exercising jurisdiction, due to the presumption against abstention. *Id.*

The majority of these factors weigh in favor of abstention. To begin, the State Foreclosure Action was filed on March 24, 2011, and BAC filed motions for default and for foreclosure and sale of Plaintiff's property on March 24, 2014. Plaintiff was served in the state

9

case on April 8, 2011, [1], Compl. at ¶ 40, but did not file his federal complaint until April 1, 2014—three years after the State Foreclosure Action was filed and after BAC moved to foreclose. Factors one, four, and seven—whether the state has assumed jurisdiction over property, the order in which jurisdiction was obtained, and the relative progress of state and federal proceedings—therefore weigh in favor of abstention.

The fifth factor—the source of governing law, state or federal—weighs at least slightly in favor of abstention or is neutral at best. Two of Plaintiff's counts arise under state law (the breach of contract claim and the alleged violations of the ICFA) and three arise under federal statutes (the FDCPA, TILA, and RESPA). Plaintiff does not dispute, however, that the Illinois Mortgage Foreclosure Law governs whether Defendants may foreclose on the property—which is one of the key factual and legal questions underlying the claims. See [20-1], Def.'s Mot. at 5.

The third factor, the desirability of avoiding piecemeal litigation, weighs in favor of abstention. Because the State Foreclosure Action likely will determine many of the factual and legal issues underlying Plaintiff's claims, it will be far more efficient to stay this case and allow the state case to go forward, as opposed to litigating the same issues concurrently in two lawsuits. Concurrent consideration of this case and the State Foreclosure Action—cases involving the same parties, contracts, documents, and legal issues—also presents a significant risk of inconsistent results. The parties do not address factors two, nine and ten—the inconvenience of the federal forum, the availability of removal, and the vexatious or contrived nature of the federal claim—which appear to be neutral.

With respect to factor eight, concurrent jurisdiction, Plaintiff concedes that he could raise his breach of contract claim to defend the State Foreclosure Action. See [22], Pl.'s Resp. at 8. Plaintiff also could raise his federal claims in state court, as the FDCPA, RESPA and TILA grant

concurrent jurisdiction in federal and state courts. See 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by [the FDCPA] may be brought in any appropriate United States district court * * * or in any other court of competent jurisdiction[.]"); 12 U.S.C § 2614 ("An action pursuant to the provisions of section 2605 [or RESPA] * * * may be brought in the United States district court or in any other court of competent jurisdiction[.]"); 15 U.S.C. § 1640(e) ("[A]ny action under this section [of the TILA] may be brought in any United States district court, or in any other court of competent jurisdiction[.]").

Plaintiff's primary arguments against abstention pertain to factor six—the remaining factor that considers the adequacy of the state court action to protect the federal plaintiff's rights. Notably, however, Plaintiff does not contend that the Cook County Circuit Court would not adequately protect his rights under the federal statutes under which he sues. Instead, Plaintiff argues that his federal suit should be allowed to proceed because his "right to a jury trial on his breach of contract claim takes precedence over the speedy adjudication of the State Foreclosure." [22], Pl.'s Resp. at 6. Plaintiff asserts the concern of "run[ning] the risk of waiving his right to a jury," trial on his legal claims if the claims are not first resolved in his federal lawsuit. See *id.* at 8. Plaintiff also argues that the State Foreclosure Action "cannot provide [him] 'complete relief' by recognizing his right to a jury or awarding relief apart from the res for breach of contract, TILA, RESPA, and ICFA." *Id.* at 11. At the same time, however, Plaintiff states that if he "raised breach of contract in the state case, the legal claims would be severed from the equitable claims to allow the factual issues to be first tried before a jury." *Id.* at 8 (citing Illinois Supreme Court Rule 232).

Illinois Supreme Court Rule 232 provides that "[i]f the court determines that [legal and equitable] matters are severable, the issues formed on the law counts shall be tried before a jury

11

when a jury has been properly demanded, or by the court when a jury has not been properly demanded. The equitable issues shall be heard and decided in the manner heretofore practiced in courts of equity." Based on this rule, Plaintiff presumably would be entitled to a jury trial on his legal claims, if necessary, if he chooses to raise them in the State Foreclosure Action. Although Plaintiff contends that the process of raising, and then severing, his legal claims in the State Foreclosure Action would be "unproductive," [22] at 8, it undoubtedly would be less efficient to litigate parallel factual and legal issues in federal and state courts at the same time.

In support of his arguments against abstention, Plaintiff relies on *First National Bank of Hoffman Estates v. Fabbrini*, 255 Ill. App. 3d 99 (Ill. App. Ct. 1st Dist. 1993). In *Fabbrini*, borrowers filed a state court action against a bank seeking rescission of a note and personal guaranty, as well as damages for fraud. See *id.* at 100. The bank filed a counterclaim seeking damages based on the borrowers' alleged default and also filed a separate foreclosure action that too was premised on the borrowers' default. *Id.* at 100–01. The court presiding over the foreclosure action refused to stay the proceedings pending resolution of the previously filed action, and the Illinois Appellate Court reversed, ordering that either the foreclosure be stayed, or, that the two actions be consolidated. See *id.* at 102–03.

Plaintiff contends that under *Fabbrini*, adjudication of his legal claims must occur prior to the State Foreclosure Action. But here, of course, the State Foreclosure Action was filed three years before Plaintiff filed his federal complaint—unlike in *Fabbrini*, where the borrowers first sued the bank. Further, contrary to Plaintiff's position, *Fabbrini* suggests that separate actions should *not* be used to adjudicate the claims of a borrower that arise from, or are related to, a concurrent foreclosure action; rather, a foreclosure action and related legal claims brought by a borrower may be considered together. See 255 Ill. App. 3d at 102 ("We fail to see the economy

12

from the standpoint of the parties or the court in allowing both of these actions [the foreclosure and the borrowers' action] to proceed independently."). In this case, Plaintiff could have raised his legal claims in the State Foreclosure Action either as a defense to foreclosure (as Plaintiff suggests in his response brief, see [22] at 8) or as counterclaims or in a third-party complaint (as BANA suggests, see [23] at 3), as opposed to attempting to litigate them in a separate suit.

Plaintiff also cites *Vangsness v. Deutsche Bank National Trust Co.*, 2012 WL 5989354, at * 6 (N.D. Ill. Nov. 29, 2012), in which a district court declined to abstain from hearing a case involving alleged RESPA violations while a concurrent foreclosure action was pending. In *Vangsness*, however, the state court had stayed the foreclosure proceedings pending resolution of the federal action. See 2012 WL 5989354, at *6. Moreover, the defendant bank failed to demonstrate that the actions were parallel or that extraordinary circumstances warranted abstention. See *id.* Here, by contrast, Defendants established that abstention is appropriate, and the Circuit Court of Cook County merely has stayed the foreclosure proceedings pending resolution of this Court's ruling on the instant motions to dismiss.

At bottom, Plaintiff's arguments against abstention suggest that Plaintiff simply prefers to litigate his claims in federal court. But Plaintiff's preference is not a relevant consideration. See *Adkins*, 644 F.3d at 500–01. Plaintiff does not contend that the state court cannot adequately protect his federal rights. Nor does Plaintiff appear to be precluded from raising his legal claims in the State Foreclosure Action, if he wishes. The Court therefore determines that factor six— the adequacy of state-court action to protect the federal plaintiff's rights—favors abstention.

Because seven of the ten factors weigh in favor of abstention, the Court concludes that abstention under *Colorado River* is appropriate. Abstention also is consistent with how several courts in the Northern District of Illinois have handled claims similar to those here that arise

from—or are closely related to—concurrent foreclosure actions. See, *e.g.*, *Smith v. Bank of America, N.A.*, 2014 WL 3938547, at *3 (N.D. Ill. Aug. 12, 2014) (abstaining under *Colorado River* on plaintiff's FDCPA and other claims because a "foreclosure [judgment] against [the plaintiff] in the state case will necessarily resolve BANA's standing to foreclose on the Mortgage and will thus dispose of the sole basis for all of [the plaintiff's] claims."); *Pirard*, 2013 WL 1154294, at *4 (abstaining under *Colorado River* on plaintiff's claims alleging that defendants improperly assigned and recorded a mortgage, forged documents, and improperly collected plaintiff's mortgage debt because "foreclosure against the plaintiffs in state court will substantially, if not fully, resolve the plaintiffs' claims here[.]"); *Charles*, 2012 WL 6093903, at *4 (abstaining under *Colorado River* on FDCPA and other claims because they "relie[d] significantly on the resolution of the primary legal issue under consideration in BoA's state court foreclosure action[.]"). Having determined that abstention is appropriate under *Colorado River*, the Court will not address Defendants' alternative arguments that Plaintiff's claims also should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

The Court next considers whether to stay these proceedings, or, alternatively, whether to dismiss the complaint, as Defendants urge. The Seventh Circuit has explained the importance of a "federal forum remain[ing] available to a plaintiff should the state court litigation prove not to be 'an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 410 (7th Cir. 1996) (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 28). For example, "[a] dismissal, even without prejudice, creates a risk that the federal plaintiff will be time-barred from reinstating his federal suit if the state proceeding does not result in a final decision on the merits." *Lumen Const. Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 698 (7th Cir. 1985). Accordingly, on numerous occasions,

14

the Seventh Circuit has determined that "a stay, not a dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine." *Selmon*, 89 F.3d at 409–10 (collecting cases). The Court therefore will not dismiss the complaint, but rather will stay the action pending resolution of the State Foreclosure Action. The Court intends that staying this case will allow the state case to proceed. Although Plaintiff contends that a stay will cause both cases to "remain dormant indefinitely," [25], Pl.'s Supp. Resp. at 2, the Circuit Court's order indicates that the state action will resume upon this Court's ruling on the instant motions to dismiss, *id.*, Ex. A.

**IV. Conclusion**

For the reasons set forth above, Defendants' motions to dismiss [20, 21] are granted in part and denied in part. This case is stayed pending resolution of the State Foreclosure Action, Case Number 11-CH-11285. The parties shall provide the Cook County Circuit Court that is presiding over 11-CH-11285 with a copy of this memorandum opinion and order. The parties also shall file a status report notifying the Court of the conclusion of the State Foreclosure Action within seven days of the Circuit Court's final disposition of the case. At that point, the parties may advise the Court as to whether any claims remain pending for this Court's consideration.

Dated: February 20, 2015

Robert M. Dow, Jr.
United States District Judge